IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
|                                )            | |
| Plaintiff,    ) | |
|                                )            | |
| -vs-                           )            | No. CR-07-75-D |
|                                )            | |
| CHRISTY ANN STEWART,           ) | |
|                                )            | |
| Defendant.    ) | |

**ORDER**

On June 26, 2008, the government filed its Notice of Potential Conflict [Doc. No. 78], asserting that the payment of Defendant Christy A. Stewart's legal fees by a third-party gives rise to a potential conflict of interest; the government asserts that it has a duty to bring such a potential conflict to the Court's attention pursuant to *United States v. Migliaccio*, 34 F.3d 1517 (10th Cir. 1994).

Defendant Stewart, through counsel, Frank Kirk, initially responded [Doc. No. 80] that it was mistakenly assumed that co-defendant Jeffrey Krause paid a $2,500.00[1] retainer to attorney Kirk. Defendant Stewart stated in an affidavit that if the retainer was not paid by co-defendant Krause, she is "at a loss to say where it did come from." The affidavit was prepared by attorney Kirk, who presented it to Defendant for execution. The affidavit purports to waive Defendant's right to conflict-free counsel. Attorney Kirk denies that a conflict exists, and contends that in any event Defendant has waived such conflict.

A hearing was held on August 28, 2008, at which testimony and exhibits were received, and the Court heard arguments of counsel. The Court further inquired of Defendant Stewart regarding

---

[1]*Testimony at the hearing regarding this matter established that the initial payment on Defendant Stewart's behalf was $1,250.00.*

her purported waiver of conflict-free counsel.

The Sixth Amendment right to counsel also guarantees a "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). The Supreme Court has recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third-party, especially when the third party is the operator of the criminal enterprise involved. *Id*. at 268-269. As in the situation of joint representation, a significant potential disadvantage to a criminal defendant whose legal fees are paid by a third party lies in that which counsel may refrain from doing. *Migliaccio*, 34 F. 3d at 1526.

The Oklahoma Rules of Professional Conduct, Rule 1.7, provides that, absent certain circumstances <u>including</u> informed consent, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. The rule further states that a concurrent conflict exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Rule 1.7(a)(2).

Comment 13 to Rule 1.7 addresses payment of legal fees by a third party. The Comment provides:

> A lawyer may be paid from a source other than the client, including a co-client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty or independent judgment to the client. See Rule 1.8(f). If acceptance of the payment from any other source presents a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in accommodating the person paying the lawyer's fee or by the lawyer's responsibilities to a payer who is also a co-client, then the lawyer must comply with the requirements of paragraph (b) before accepting the representation, including determining whether the conflict is consentable and, if so, that the client has adequate information about the material risks of the

representation.

In order for a client to consent to such representation, the consent must be "informed" and in writing. Rule 1.7(b)(4). Indeed, the Sixth Amendment right to conflict-free counsel may be waived, but such a waiver "must be knowing, voluntary, and done with awareness of relevant circumstances and likely consequences." *Wallace v. Ward*, 191 F.3d 1235, 1245 (10th Cir. 1999).

At the August 28 hearing on the government's Notice of Potential Conflict it was established that attorney Kirk was retained on behalf of Defendant Stewart by her co-defendant Krause, and another individual identified only as "Oscar." Krause, as well as Krause's common-law wife, Rayne Shade, testified that Oscar was Krause's supplier of methamphetamine, and was known by attorney Kirk. They further testified that Oscar insisted that Kirk be retained and that he would help pay for Kirk's services. Krause testified that Oscar wanted Kirk on the case so that Oscar could stay abreast of developments in the case. Krause further testified that he and Oscar met with Kirk about the case and paid Kirk part of the required $2,500.00 retainer. Krause stated that he gave Oscar a white BMW automobile as partial payment of a drug debt, and that Oscar then provided the BMW to Kirk as further payment of the retainer required for the representation of Stewart.

Contrary to his earlier inconsistent representations which varied between having received the $2,500.00 retainer from Krause, and having received $2,500.00 in an envelope which appeared on his desk, presumably from Krause, at the hearing attorney Kirk confirmed that he met with Oscar and Krause about the representation of Defendant Stewart, and that one of them paid him $1,250.00 toward his retainer. Kirk further confirmed that he later received the white BMW from Oscar or someone in his employ, and accepted it as payment of the remaining $1,250.000 owed in connection

with the retainer.[2]  Kirk confirmed that Oscar was, at the very least, a former client.  Kirk further stated that Oscar is now incarcerated, and that "Oscar's replacements" (presumably referring to the local methamphetamine trade) have made unspecified threats against Kirk.  Kirk denied that an actual conflict of interest exists, and assured the Court that he has not foregone any alternative strategy that would have been beneficial to Defendant Stewart because of the fee payments by third-parties.

The Court inquired of Stewart in connection with her purported waiver of conflict-free counsel.  Stewart asserted that she understands the nature of the right she seeks to waive, and that she freely and voluntarily waives the same.  She further professed satisfaction with the representation provided by attorney Kirk.[3]  However, Stewart claimed to have no knowledge of Oscar, and had never been informed by Kirk that Oscar arranged and paid for Kirk's representation of her.  Further, Stewart stated that at the time Kirk presented the waiver of conflict-free counsel to her, and obtained her signature on the same, he did not inform her that Oscar had provided payment for the representation.

The payment of legal fees by a third-party gives rise to a potential conflict of interest.  *Wood*, 450 U.S. at 268-69.  The payment of legal fees by a person involved in criminal conduct related to the charges pending against a defendant – as apparently is the case here – moves the potential conflict into the realm of reality.  Further, under the circumstances here where testimony suggests that Oscar was concerned about what Defendant Stewart might tell the authorities and wanted to be

---

[2] Kirk further stated that he allowed his son to drive the BMW until it was wrecked, and then he traded it back to Oscar.

[3] Defendant Stewart previously pled guilty to the single count of the Superseding Information charging her with possession of 5 grams or more of methamphetamine with intent to distribute; the plea was accepted by the Court.

informed about developments in the case, the inference of an actual conflict of interest becomes stronger. Indeed, attorney Kirk made no mention of Oscar or the cash and BMW he provided as partial payment of Kirk's fee in his initial representations to the Court or to the assigned prosecutor.[4] During the hearing, however, Kirk confirmed that he met with Oscar and Krause regarding the representation of Stewart, received money from them, and later accepted the BMW from Oscar. Kirk's initial omission of Oscar's involvement is conspicuous, to say the least.

Issues of candor to the Court aside,[5] it remains that Kirk had an ethical duty to fully inform his client, Stewart, of the fee payments by third-parties, and obtain her consent to proceed with the representation. *See* Oklahoma Rule of Professional Conduct 1.7. It is undisputed that he failed to do so. Moreover, any waiver by Stewart of her right to conflict-free counsel must be knowing, voluntary, and done with awareness of relevant circumstances and likely consequences. *Wallace*, 191 F.3d at 1245. Clearly, having never been informed of the role of Oscar in providing for her representation, Stewart's purported waiver fails to meet the standard set forth in *Wallace*, and is ineffective.

It is difficult to say here whether Defendant Stewart's case would have progressed differently without the involvement and influence of Oscar in the selection and payment of her attorney, Kirk. But such is the nature of the type of conflict present here – it is the matter of what counsel may have refrained from doing that creates the danger. *Migliaccio*, 34 F.3d at 1526. Under the circumstances,

---

[4] *Kirk filed objections to the Presentence Investigation Report on November 26, 2007 in which he then asserted that co-defendant Krause paid Kirk's initial retainer and notified Kirk that he would object to Defendant Stewart providing assistance to authorities. Neither does Kirk mention Oscar in the Answer to Notice of Potential Conflict filed on July 8, 2008. Further, Kirk confirmed during the hearing that he had also informed the assigned Assistant United States Attorney that the retainer payment mysteriously showed up in an envelope left in his office.*

[5] *Pursuant to the Local Criminal Rules, the Court will refer this matter to the Chief Judge so that she may determine whether disciplinary action, including but not limited to potential referral to the Oklahoma Bar Association, is warranted. See LCrR57.2(a), which applies LCvR83.6 to criminal proceedings.*

and to protect and preserve Defendant's rights and the integrity of these proceedings, the Court concludes that Frank Kirk must be disqualified, that new counsel must be appointed to represent Defendant, and that, upon consultation with new counsel, Defendant must be given an opportunity to withdraw her plea of guilty.

It is therefore ordered that Defendant's retained counsel, Frank Kirk, is disqualified from further representation in this matter, and that the Federal Public Defender is appointed to represent Defendant;[6] it is further ordered that, upon consultation with new counsel, Defendant inform the Court whether she desires to withdraw her guilty plea previously accepted by the Court. In the event Defendant desires to maintain her plea and proceed to sentencing, she shall be granted 14 days after such notification in which to assert objections to the Presentence Investigation Report.

IT IS SO ORDERED this   2nd   day of September, 2008.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[6]At the August 28 hearing, Kirk advised the Court that Defendant has no income and no ability to pay counsel fees. He further advised that Defendant's mother lacks the financial resources to assist in paying counsel fees. Therefore, the evidence before the Court suggests that Defendant will qualify for representation by the Federal Public Defender.